IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JOSEPH E. BROWN,
    Petitioner,

vs.                                  Case No. 5:10cv160/MCR/EMT

KENNETH S. TUCKER,[1]
    Respondent.
_____/

### ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1). Respondent filed an answer and relevant portions of the state court record (doc. 14). Petitioner filed a reply (doc. 22).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed by the parties and established by the state court record (*see* doc. 14, Exhibits).[2] Petitioner was charged in the

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter A. McNeil, as Secretary for the Department of Corrections. Secretary Tucker is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 14). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Circuit Court in and for Bay County, Florida, with one count of robbery with a firearm (Ex. C at 8). Following a jury trial on April 27, 1999, he was convicted as charged (Ex. C at 63, Ex. D). He was sentenced on June 23, 1999, as a habitual felony offender and a prison releasee reoffender to life imprisonment, with presentence credit of 405 days (Ex. C at 111–16).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D99-2902 (*see* Ex. E). The First DCA affirmed the judgment on January 31, 2001, with the mandate issuing February 16, 2001 (Exs. G, J). Brown v. State, 775 So. 2d 1019 (Fla. 1st DCA 2001). Petitioner did not seek further review.

On December 24, 2001, Petitioner filed a pro se motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. L at 202–08). In an order rendered February 21, 2002, the state circuit court granted the motion to the extent that Petitioner's life sentence as a prison releasee reoffender was deleted from the judgment and sentence; however, his life sentence as a habitual felony offender, and all other respects of the judgment, remained in place (*id.* at 214).

On February 22, 2002, Petitioner filed a pro se motion to correct illegal sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. L at 215–20). In an order rendered March 11, 2002, the state circuit court denied the motion (*id.* at 221).

On February 15, 2003, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. L at 227–98). On August 15, 2003, the state circuit court summarily denied ten (10) of Petitioner's twelve (12) claims, set an evidentiary hearing on the remaining two (2) claims, and appointed counsel for Petitioner (*id.* at 375–77, 401, 412). The limited evidentiary hearing was held on March 5, 2004 (*id.* at 485–545). On May 28, 2004, the state court rendered a final order denying Petitioner's Rule 3.850 motion (*id.* at 441–43). Petitioner appealed the decision to the First DCA, Case No. 1D04-2969. On March 3, 2005, the First DCA dismissed the appeal (Ex. N).

On August 18, 2004, while the appeal of his Rule 3.850 motion was pending, Petitioner's counsel filed a motion to enter new evidence, namely, testimony of Joseph L. Wilson, who confessed to the State Attorney's Office in July of 2003, that he committed the robbery for which Petitioner was convicted (Ex. U at 459–61). Petitioner's counsel also requested permission to have

his fingerprint expert examine Mr. Wilson's fingerprint to determine whether it matched the fingerprint on a wine bottle found at the scene of the robbery (*id.*). On September 10, 2004, Petitioner's counsel filed a motion for an order authorizing a polygraph examination of Joseph Wilson, one of his witnesses at the evidentiary hearing on his Rule 3.850 motion (*id.* at 506–08). The state circuit court denied the motions on October 6, 2004, on the ground that it lacked jurisdiction to entertain the motions in light of the pending appeal of Petitioner's Rule 3.850 motion (*id.* at 527). Petitioner appealed the decision to the First DCA, Case No. 1D04-5038. The First DCA affirmed per curiam without written opinion on February 24, 2005, with the mandate issuing March 22, 2005 (Exs. Q, R). Brown v. State 895 So. 2d 1068 (Fla. 1st DCA 2005) (Table).

  On June 6, 2005, Petitioner's counsel filed a renewed motion to enter Mr. Wilson's testimony, examine the fingerprint, and vacate Petitioner's conviction and sentence (Ex. U at 535–42). The state circuit court construed the motion as a second Rule 3.850 motion and held an evidentiary hearing on July 21, 2006, at which Mr. Wilson testified that he committed the robbery (*id.* at 577–80, 704–32). The State submitted a copy of a report from a fingerprint expert, which had been provided to defense counsel on January 256, 1999, prior to Petitioner's trial, stating the fingerprint on the wine bottle did not match Joseph Wilson, but matched Angela McLendon, the store clerk who was robbed (*id.* at 547–52). The state circuit court denied the second Rule 3.850 motion in an order rendered August 29, 2007, on the ground that Mr. Wilson's confession was not credible, and the new evidence was not of such nature that it would probably produce an acquittal on retrial (*id.* at 837–39). Petitioner appealed the decision to the First DCA, Case No. 1D07-4898. On May 13, 2008, Petitioner filed a third Rule 3.850 motion based upon newly discovered evidence, namely, evidence allegedly impeaching a law enforcement officer's testimony at the evidentiary hearing that Mr. Wilson's photo was included in the photographic line-up presented to Ms. McLendon (*id.* at 951–55). At Petitioner's request, the First DCA relinquished jurisdiction to the circuit court for the purpose of consideration and disposition of Petitioner's third Rule 3.850 motion (*see* Ex. S). The state circuit court denied the third Rule 3.850 motion in an order rendered June 18, 2008 (*id.* at 964–65). Petitioner appealed the decision denying his third Rule 3.850 motion to the First DCA, Case No. 1D08-4099. The First DCA consolidated the appeal with Petitioner's appeal of the denial of his second Rule 3.850 motion (*see* Ex. T). The First DCA affirmed the circuit

court's decisions per curiam without written opinion on July 30, 2009, with the mandate issuing September 30, 2009 (Exs. BB, CC, DD, GG).  Brown v. State, No. 1D07-4898, 16 So. 3d 821 (Fla. 1st DCA 2009) (Table); Brown v. State, No. 1D08-4099, 13 So. 3d 470 (Fla. 1st DCA 2009) (Table).

Petitioner's counsel filed the instant federal habeas action on June 21, 2010 (doc. 1).

## II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."

Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, — F.3d —, 2011 WL 609844, at *13 (11th Cir. Feb. 23, 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at *17 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the

Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at *18 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at * 18. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the

petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

III. PETITIONER'S CLAIM

> Ground One: "The state postconviction court's order denying Petitioner Brown's state postconviction motion was contrary to and an unreasonable application of *In re Winship*, 397 U.S. 358, 364 (1970), and constitutional due process principles. Additionally, the state postconviction court's order denying Petitioner Brown's state postconviction motion was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The record establishes that Petitioner Brown was 'actually innocent' of the crime charged."

Petitioner states Joseph Wilson confessed he committed the robbery for which Petitioner was convicted (*see* doc. 1 at 5; doc. 2 at 2, 4–11, 14, 20–27, 29–30). Petitioner states after he received this newly discovered evidence, he filed a state post-conviction motion, but the court denied relief (doc. 1 at 5; doc. 2 at 2–30). He contends the decision was contrary to and an unreasonable application of In re Winship, 397 U.S. 358, 364 (1970), and was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings (*id.*). Petitioner argues Mr. Wilson's confession establishes his actual innocence of the crime charged, and if the jury had heard this new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, especially since the only evidence of Petitioner's guilt was an unreliable eyewitness identification (Ms. McLendon's) and identification by a witness who was not present when the actual robbery occurred (doc. 1 at 5–6; doc. 2 at 2–30; doc. 22 at 3).

Respondent contends Petitioner's claim is not cognizable, because controlling law does not permit freestanding actual innocence claims in federal habeas proceedings under § 2254 (doc. 14 at 7). Respondent cites Herrera v. Collins, 506 U.S. 390 (1993) and several Eleventh Circuit cases in support of this argument (*id.* at 7–8). Respondent additionally argues Petitioner failed to exhaust a due process claim under Winship; therefore, the claim is procedurally barred from federal review (*id.* at 10–20).

Petitioner acknowledges in his reply brief that the Eleventh Circuit and this district court have held that federal habeas relief is unavailable on a freestanding innocence claim in non-capital cases (doc. 22 at 1–2). However, he argues the Supreme Court assumed in Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 129 S. Ct. 2308 (2009) that a non-capital litigant could assert such a claim in federal habeas (*id.* at 2).

In Osborne, the Supreme Court stated the following in relation to this type of claim:

> Whether [a federal constitutional right to be released upon proof of actual innocence] exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo*, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.

Dist. Attorney's Office for Third Judicial Dist. v. Osborne, — U.S. —, 129 S. Ct. 2308, 2321, 174 L. Ed. 2d 38 (2009) (citing House v. Bell, 547 U.S. 518, 554–55, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) ("We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet."); Herrera, 506 U.S. at 398–417, 419–21, 427–28).

The Supreme Court's "assuming" that a federal constitutional right to be released upon proof of actual innocence exists "in some cases" is far from an actual holding that such a federal constitutional right exists.

Furthermore, the Eleventh Circuit's view of such claims is well settled:

> "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400, 113 S. Ct. 853, 860, 122 L. Ed. 2d 203 (1993). It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial. "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.*

Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002); *see also* Mize v. Hall, 532 F.3d 1184, 1195 (11th Cir. 2008); Jordan v. Sec'y Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007) (refusing to consider a claim of actual innocence in a non-capital case because "our precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases").

Case No. 5:10cv160/MCR/EMT

In the instant case, Petitioner does not allege that a constitutional error occurred at his trial; therefore, his claim of actual innocence based upon the newly discovered confession of Joseph Wilson does not state a cognizable ground for federal habeas relief. Even assuming that a freestanding actual innocence claim is cognizable in federal habeas, Supreme Court precedent suggests that such a claim would only be available in the context of capital cases, to prevent the execution of an innocent person. Here, Petitioner does not face the death penalty. *See* Herrera, 506 U.S. at 417 ("We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional. . . .").

Moreover, the Supreme Court has not articulated a standard for evaluating freestanding claims of actual innocence in non-capital cases. In the capital context, the Supreme Court noted:

> [B]ecause of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high.

Herrera, 506 U.S. at 417. Aside from stating the "threshold showing" would be "extraordinarily high," the Court did not articulate the legal standard to be applied to such claims in the capital context, let alone the non-capital context.

Petitioner's reliance upon Winship, either as authority for federal habeas review of a freestanding actual innocence claim or as setting forth the controlling legal standard for such a claim, is misplaced. In Winship, the Supreme Court explicitly held, "the Due Process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364. The Court then extended that holding to juveniles charged with crimes. *Id.* at 368. In the instant case, Petitioner does not allege the jury was incorrectly instructed regarding the burden of proof necessary to convict. Nor does Petitioner allege the evidence was insufficient to support a rational verdict, as required by Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Moreover, the Supreme Court explained in Herrera that an actual innocence claim based on newly discovered evidence is not a claim under Winship or Jackson:

> The type of federal habeas review sought by petitioner here [a free-standing actual innocence claim] is different in critical respects than that authorized by Jackson. First, the Jackson inquiry is aimed at determining whether there has been an independent constitutional violation—i.e., a conviction based on evidence that fails to meet the Winship standard. Thus, federal habeas courts act in their historic capacity—to assure that the habeas petitioner is not being held in violation of his or her federal constitutional rights. Second, the sufficiency of the evidence review authorized by Jackson is limited to "record evidence." 443 U.S. at 318, 99 S. Ct. at 2788. Jackson does not extend to nonrecord evidence, including newly discovered evidence. Finally, the Jackson inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.

Herrera, 506 U.S. at 403.

Petitioner's freestanding actual innocence claim is not cognizable on federal habeas. Furthermore, in non-capital cases, there is no "clearly established Federal law," for purposes of review under § 2254(d)(1). Therefore, Petitioner cannot show that the state court's adjudication of his newly discovered evidence claim was contrary to or an unreasonable application of clearly established federal law. Accordingly, Petitioner is not entitled to federal habeas relief under § 2254(d).[4]

IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L.

---

[4] In light of this conclusion, the court need not address Respondent's argument that Petitioner's claim was not properly exhausted and is procedurally defaulted. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (doc. 1) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 6th day of September 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**